1  Surjit P. Soni (State Bar No. 127419)
   M. Danton Richardson (State Bar No. 141709)
2  Leo E. Lundberg, Jr. (State Bar No. 125951)
   THE SONI LAW FIRM
3  35 North Lake Ave., Suite 720
   Pasadena, California  91101
4  (626) 683-7600 Telephone
   (626) 683-1199 Fax
5  SURJ@SONILAW.COM
   DANTON@SONILAW.COM
6  LEO@SONILAW.COM
   Attorneys for Plaintiff,
7  BIBIJI INDERJIT KAUR PURI

8

9              **UNITED STATES DISTRICT COURT**
              **CENTRAL DISTRICT OF CALIFORNIA**
10

11 BIBIJI INDERJIT KAUR PURI, an          ) CASE NO.: CV 10-882-JFW (VBKx)
   individual,                            )
12                                         ) **PLAINTIFF'S MEMORANDUM OF**
                Plaintiff,                 ) **POINTS AND AUTHORITIES IN**
13                                         ) **OPPOSITION TO DEFENDANT'S**
        vs.                                ) **MOTION TO DISMISS PLAINTIFF'S**
14                                         ) **FIRST AMENDED COMPLAINT**
   GOLDEN TEMPLE OF OREGON, LLC, )
15 an Oregon Limited Liability Corporation; ) DATE:     June 14, 2010
   DOES 1 through 10,                     ) TIME:     1:30 a.m.
16                                         ) CTRM:     16
                Defendants.                )          312 N. Spring St.
17 _____ )          Los Angeles, CA 90012

18

19

20

21

22

23

24

25

26

27

28

S:\Soni_Law\Inderjit Puri\Inderjit vs GTO-TM\pldgs\Opp2Mtn2DismissFAC - FINAL.wpd

1

## **Table of Contents**

2  I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

3  II.  APPLICABLE STANDARDS FOR MOTIONS TO DISMISS  . . . . . . . . . .  2

4  III. ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

5      A.  The Allegations of the Complaint Are Sufficient to Establish Inderjit
           Has Standing to Pursue a Claim for Trademark Infringement . . . . . . .  4
6
           1.  The YOGI and YOGI TEA Marks Were Included in the Marks
7              Licensed to GTO  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

8          2.  The Allegations of the FAC Are Sufficient to Establish Plaintiff's
               Ownership of the Marks and Standing to Sue . . . . . . . . . . . . . . .  6
9
       B.  The Allegations of the Complaint Are Sufficient to Establish
10         Inderjit Has Standing to Pursue a Claim for False Designation
           of Origin / Association Under Section 43a of the Lanham Act . . . . . . .  8
11
           1.  Plaintiff's Ownership Allegations are Sufficient . . . . . . . . . . . .  8
12
           2.  Plaintiff Sufficiently Alleges a Commercial Injury  . . . . . . . . . .  9
13
       C.  Plaintiff Has Standing to Cancel GTO's Trademark Registration . . . .  12
14
       D.  Plaintiff Has Properly Stated Claims upon Which Relief May
15         Be Granted  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

16         1.  Plaintiff Properly Alleges a Trademark Infringement Claim . . .  13

17         2.  Plaintiff Properly Alleges a Claim under Lanham Act §43a . . .  14

18         3.  Plaintiff Properly States a Claim for Unfair Competition . . . . .  15

19         4.  Plaintiff Has Properly Alleged a Claim for Unfair Trade
               Practices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16
20
           5.  The Statute of Limitations Has Not Run on Plaintiff's Claim
21             for Unfair Trade Practices  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

22         6.  Plaintiff Properly States a Claim for Trademark Cancellation  .  18

23     E.  This Court Should Not Dismiss or Stay this Case Based on the
           Arbitration Clause in the License Agreement Because GTO'S Post-
24         Termination Infringement and Its Use of Licensed Marks on Goods
           Never Licensed Is Not Arbitrable . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19
25
       F.  This Court Cannot Issue an Order Compelling Arbitration Outside
26         of the Central District of California  . . . . . . . . . . . . . . . . . . . . . . . . . .  22

27 IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

28

## Table of Authorities

A. & E. Plastik Pak Co. v. Monsanto Co.,
   396 F.2d 710 (9th Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Alvarez v. Hill,
   518 F3d 1152 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argus Media Ltd. v. Tradition Financial Services Inc.,
   2009 WL 5125113 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Bell Atlantic Corp. v. Twombly,
   550 US 544, 127 S.Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Bowmar Instrument Corp. v. Continental Microsystems, Inc.,
   497 F. Supp. 947, 208 U.S.P.Q. 496 (S.D.N.Y. 1980) . . . . . . . . . . . . . . . 11

Branch v. Tunnell,
   14 F3d 449 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.,
   971 F.2d 272 (9th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Conley v. Gibson,
   355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) . . . . . . . . . . . . . . . . . . . . . 3

Continental Airlines, Inc. v. Mundo Travel Corp.,
   412 F.Supp.2d 1059 (E.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Continental Grain Co. v. Dant & Russell,
   118 F.2d 967 (9th Cir. 1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Dent v. Turpin,
   2 J. & H. 139 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

First Options of Chicago, Inc. v. Kaplan,
   514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) . . . . . . . . . . . 20, 21

Galbraith v. County of Santa Clara,
   307 F.3d 1119 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Gardner v. Investors Diversified Capital, Inc.,
   805 F.Supp. 874 (D. Colo. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Gateway Coal Co. v. United Mine Workers of Am.,
   414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974) . . . . . . . . . . . . . . . . . 21

Gilligan v. Jamco Develop. Corp.,
   108 F3d 246 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.,
   531 F.3d 767 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Haddock v. Board of Dental Examiners of Calif.,
   777 F.2d 462 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Howsam v. Dean Witter Reynolds, Inc.,
    537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) . . . . . . . . . . . . . . . . . 21

Imagineering, Inc. v. Kiewit Pac. Co.,
    976 F.2d 1303 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

International Audiotext Network, Inc. v. AT & T Co.,
    62 F.3d 69 (2nd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

International Union, United Automobile Aircraft v. Benton Harbor Malleable
Industries,
    242 F.2d 536 (6th Cir. 1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Iskenderian v. Iskenderian,
    144 Cal.App.4th 1162, 51 Cal.Rptr.3d 163 (2006) . . . . . . . . . . . . . . . . . . . 8

Jackson v. Rent-A-Center West, Inc.
    581 F.3d 912 ( 9th Cir 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Jenkins v. McKeithen,
    395 US 411, 89 S.Ct. 1843 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Miller v. Glenn Miller Productions, Inc.,
    454 F.3d 975, 79 U.S.P.Q.2d 1545 (9th Cir. 2006) . . . . . . . . . . . . . . . . . 11

Navarro v. Black,
    250 F.3d 729 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Norden Restaurant Corp. v. Sons of Revolution,
    51 N.Y.2d 518, 434 N.Y.S.2d 967, 415 N.E.2d 956, 210 U.S.P.Q. 944 (1980),
    cert. denied, 454 U.S. 825, 70 L. Ed. 2d 100, 102 S. Ct. 115, 214 U.S.P.Q.
    584 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Pearl Brewing Co. v. Trans-USA Corp.
    1997 WL 340940 (N.D. Tex. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Peloza v. Capistrano Unified School Dist.,
    37 F3d 517 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Porter v. Jones,
    319 F.3d 483 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Provident Bank v. Kabas,
    141 F.Supp.2d 310 (E.D.N.Y.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Ryan v. Allen,
    992 F.Supp. 152 (N.D.N.Y.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Self Directed Placement Corp. v. Control Data Corp.,
    908 F2d 462 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Smith v. Ben Bennett, Inc.,
    133 Cal.App.4th 1507, 35 Cal.Rptr.3d 612 (2005) . . . . . . . . . . . . . . . . . . 19

*Steele v. Bulova Watch Co.*,
    344 U.S. 280, 73 S.Ct. 252 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Steelworkers v. Warrior & Gulf Nav. Co.*,
    363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) . . . . . . . . . . . . . . . . . . 21

*Suh v. Yang*,
    987 F.Supp. 783 (N.D. Cal. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Textile Unlimited, Inc. v. A..BMH and Co., Inc.*,
    240 F.3d 781 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Redwood City*,
    640 F2d 963 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Watec Co., Ltd. v. Liu*,
    403 F.3d 645, 74 U.S.P.Q.2d 1128 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . 11

*Wyatt Earp Enterprises v. Sackman, Inc.*,
    157 F.Supp. 621, 116 U.S.P.Q. 122 (S.D.N.Y. 1958) . . . . . . . . . . . . . . . . . 22

**Miscellaneous**

68 Cong., 1st Sess., House of Rep. Report No. 96 . . . . . . . . . . . . . . . . . . . . . . . . 22

McCarthy on Trademarks and Unfair Competition . . . . . . . . . . . . . . . . . . . . . 11, 12

Moore's Federal Practice, Vol. 1, § 8.01 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Rutter Group Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 8-A, §8.46 . . . . 14, 16

9 U.S.C. § 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

15 U.S.C. § 1052(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3          For decades, Defendant Golden Temple of Oregon LLC and its predecessor(s)

4    (collectively "GTO") have utilized and reaped untold profits from producing and

5    marketing teas developed by Yogi Bhajan under marks he adopted and used for his

6    teas.  Under license, GTO used the YOGI and YOGI TEA marks, as well as Yogi

7    Bhajan's image and likeness to establish an inextricably intertwined public perception

8    of affiliation and sponsorship between Yogi Bhajan and the YOGI brand of teas and

9    other YOGI products.  GTO is now attempting to usurp the goodwill developed over

10   those decades, which by contract GTO agreed belonged exclusively to the licensor,

11   Yogi Bhajan and Bibiji Inderjit Kaur Puri ("Plaintiff"), his wife, and to keep for itself

12   all of the profits from its sales of the teas developed by Yogi Bhajan, by merely

13   changing the packaging and excluding the image and likeness of Yogi Bhajan, while

14   still using the licensed trademarks.

15         Rather than answer the First Amended Complaint ("FAC"), GTO seeks to

16   needlessly increase the cost of litigation to Plaintiff by having to oppose a motion to

17   dismiss.  The Complaint plainly alleges sufficient facts to establish Plaintiff's

18   standing to sue on each of the claims alleged.  Moreover, Plaintiff's allegations

19   sufficiently put GTO on notice of the claims against it.

20         Furthermore, GTO terminated the license agreement from which it now seeks

21   to enforce an arbitration provision.  The license agreement is no longer in effect and

22   the arbitration provision does not encompass post-termination infringement of the

23   trademarks in issue or the uses which were never licensed to GTO.

24

25   **II.    APPLICABLE STANDARDS FOR MOTIONS TO DISMISS**

26         A motion to dismiss a complaint under Fed.R.Civ.P. 12(b)(6) tests the legal

27   sufficiency of the claims in the complaint.  *Navarro v. Black*, 250 F.3d 729, 731 (9th

28   Cir. 2001).   The test is whether the alleged facts support any valid claim entitling

1    plaintiff to relief, not necessarily the one intended by plaintiff, and a complaint should

2    not be dismissed because plaintiff erroneously relies on the wrong legal theory if the

3    alleged facts support any valid theory.  *Haddock v. Board of Dental Examiners of*

4    *Calif.*, 777 F2d 462, 464 (9th Cir. 1985).  "The motion to dismiss for failure to state a

5    claim is viewed with disfavor and is *rarely granted*."  *Gilligan v. Jamco Develop.*

6    *Corp.*, 108 F3d 246, 249 (9th Cir. 1997) (emphasis added; internal quotes omitted).

7    Dismissal is proper only in "extraordinary" cases.  *United States v. Redwood City*,

8    640 F2d 963, 966 (9th Cir. 1981).

9          To avoid dismissal**,** a complaint must satisfy only the minimal notice pleading

10   requirements of Fed.R.Civ.P. 8(a)(2).  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir.

11   2003).  Rule 8(a)(2) requires only "a short and plain statement of the claim showing

12   that the pleader is entitled to relief."  This requirement is to "give the defendant fair

13   notice of what the ... claim is and the grounds upon which it rests."  *Conley v. Gibson*,

14   355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

15         Pleadings are construed liberally in favor of the pleader.  *Jenkins v. McKeithen*,

16   395 US 411, 421, 89 S.Ct. 1843, 1849 (1969).  Rule 8 contains "a powerful

17   presumption against rejecting pleadings for failure to state a claim."  *Gilligan v.*

18   *Jamco Develop. Corp.*, 108 F3d 246, 249 (9th Cir. 1997).  All allegations of material

19   fact are taken as true and construed in the light most favorable to plaintiff.  *Bell*

20   *Atlantic Corp. v. Twombly*, 550 US 544, 127 S.Ct. 1955, 1965 (2007).  The Court

21   must assume all general allegations "*embrace whatever specific facts* might be

22   necessary to support them."  *Peloza v. Capistrano Unified School Dist.*, 37 F3d 517,

23   521 (9th Cir. 1994) (emphasis added).

24         Notice pleading only requires a plaintiff to set forth claims for relief, not causes

25   of action, statutes or legal theories.  As long as the facts alleged provide "fair notice"

26   of the claim, a "complaint need not identify the statutory or constitutional source of

27   the claim raised in order to survive a motion to dismiss."  *Alvarez v. Hill,* 518 F3d

28   1152, 1157 (9th Cir. 2008).  For purposes of Rule 12(b)(6), "claim" means a set of

facts which, if established, entitle the pleader to relief.  *Bell Atlantic Corp. v. Twombly*, *supra*, 127 S.Ct. at 1965.  A claim may be implied from the alleged facts - it is not always necessary to specify the precise nature of the claim where the alleged facts put defendant on notice.  *Self Directed Placement Corp. v. Control Data Corp.*, 908 F2d 462, 466 (9th Cir. 1990) (complaint alleged claims for copyright infringement, violation of trade secrets and fraud, but not unfair competition – held: alleged facts were sufficient to support unfair competition claim).

Documents not physically attached to the complaint may be considered by the Court on a 12(b)(6) motion to dismiss if: a) the complaint refers to such document; b) the document is "central" to plaintiff's claim; and c) no party questions the authenticity of the copy attached to the 12(b)(6) motion.  *Branch v. Tunnell,* 14 F3d 449, 454 (9th Cir. 1994) (overruled on other grounds in *Galbraith v. County of Santa Clara*, 307 F3d 1119, 1127 (9th Cir. 2002).  "Where a court considers contractual documents beyond the face of the complaint in the context of a motion to dismiss for failure to state a claim, it should 'strive to resolve any contractual ambiguities in [the nonmoving party's] favor'."  *Continental Airlines, Inc. v. Mundo Travel Corp.*, 412 F.Supp.2d 1059, 1065-66 (E.D. Cal. 2006) (quoting *International Audiotext Network, Inc. v. AT & T Co.*, 62 F3d 69, 72 (2nd Cir. 1995).)

## III.   ARGUMENT

### A.   The Allegations of the Complaint Are Sufficient to Establish Inderjit Has Standing to Pursue a Claim for Trademark Infringement

In order to establish standing to sue, a plaintiff must allege "an injury to himself that is distinct and palpable, as opposed to merely abstract, and the alleged harm must be actual or imminent, not conjectural or hypothetical.  Further, the litigant must satisfy the causation and redressability prongs of the Art. III minima by showing that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision."  *Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F2d

1303, 1308 (9th Cir. 1992).  Plaintiff satisfies this test, because she owns a 50%
interest in the trademarks at issue and Defendants are using the marks without
permission of any owner of the marks and without payment of any royalties.

### 1.    The YOGI and YOGI TEA Marks Were Included in the Marks Licensed to GTO

The license agreement provides, in pertinent part, as follows:

1.2    The term **"HSKY Marks"** and **"Marks"** shall mean
***any** trademark, servicemark, logo, insignia, seal, design,
or other symbol or device **used by or identifying**
**Harbhajan Singh Khalsa Yogiji (also known as Yogi
Bhajan)***, specifically including the name of Harbhajan
Singh Khalsa Yogiji, or Yogi Bhajan, any likeness of him
approved in accordance with this Agreement, and a
facsimile of his signature confirming any statement of 150
words or less (approved in accordance with this Agreement)
as his statement.

* * *

1.4    The term **"Licensed Trademarks"** shall mean the
Marks as defined in Section 1.2 and listed on the attached
Exhibit 1.4, which Exhibit may be amended from time to
time by mutual agreement of the parties.  (Emphasis added.)

Through paragraph 1.4, the License Agreement licensed GTO to use the HSKY
marks defined in paragraph 1.2.  This included the YOGI mark, because it is a term
which was used by and identified Yogi Bhajan, and the YOGI TEA mark, because it
was a mark used by Yogi Bhajan (see paragraph 13 of the FAC).  Exhibit 1.4 does not
require that every licensed mark be attached on Exhibit 1.4 which served as a
convenient means of describing the composite mark which GTO was first intending

to use.  There is no other reasonable construction of these provisions, because all terms must be given meaning and not be rendered superfluous.  *Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.*, 531 F.3d 767, 789 (9th Cir. 2008) ("It is well settled that a contract should be interpreted so as to give meaning to each of its provisions. 'Since an agreement is interpreted as a whole, it is assumed in the first instance that no part of it is superfluous.' ") (quoting *Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*, 971 F.2d 272, 278-79 (9th Cir.1992) (quoting Restatement (Second) of Contracts § 203(a) cmt. b (1979).)

Defendant's reading of the License Agreement would render paragraph 1.2 superfluous, because the licensed marks would merely be those listed on Exhibit 1.4, which could have been accomplished without the inclusion of paragraph 1.2 in the agreement.  At the very least, paragraph 1.2 is an explicit recognition that "any" mark adopted or used by Yogi Bhajan, including his name, image, signature and sayings are proprietary trademarks of Yogi Bhajan which could not be used without his consent.

### 2.   The Allegations of the FAC Are Sufficient to Establish Plaintiff's Ownership of the Marks and Standing to Sue

GTO argues Plaintiff's "sole claim of ownership is based on the License Agreement." [Motion at p. 6:2-3] GTO also argues Plaintiff makes no allegation that "she is (1) the owner of federal trademark registration, (2) the owner of an unregistered mark, or (3) a non-owner with a cognizable interest in the allegedly infringed trademark." [Motion at p. 6:12-18]  It does not appear that GTO has even read the FAC, because GTO's assertions are demonstrably false.  The FAC alleges:

13.  Beginning around 1969, after his classes, Yogi Bhajan would serve his students a special spiced tea he developed based upon the healing principles of Ayurveda, which *he began calling "Yogi Tea,"* referring to the tea that

1    he, Yogi Bhajan had developed.

2        14.  In or around 1984, with Yogi Bhajan's

3    encouragement and assistance, some of his students formed

4    a company to market and sell this "Yogi Tea." **Yogi Bhajan**

5    **granted the company**, which was originally known as the

6    Yogi Tea Company, **a license to use his name and likeness**

7    **and the trademark "Yogi Tea"** to market teas based on

8    formulas developed by Yogi Bhajan.'

9                                    * * *

10       16.  The license provides that GTO is authorized, by

11   virtue of the license, to use Yogi Bhajan's image and

12   sayings and **his name** and **all names or terms by which he**

13   **is known or which are associated with him** (collectively

14   referred to as the "HSKY marks" [meaning the Harbhajan

15   Singh Khalsa Yogiji, Yogi Bhajan's full name] or "Licensed

16   Marks") in connection with the sales of certain goods,

17   including teas. **The Licensed marks include "Yogi Tea."**

18                                   * * *

19       22.  Yogi Bhajan and his wife, Plaintiff BIBIJI,

20   created **a joint living trust** which thereafter **owned and**

21   **controlled the trademark rights and other intellectual**

22   **property of Yogi Bhajan.  After Yogi Bhajan's death, this**

23   **trust was terminated with BIBIJI receiving her fifty**

24   **percent (50%) interest in and to the trust assets, including**

25   **the trademarks and other intellectual property rights**

26   related to Yogi Bhajan.

27                                   * * *

28   //

24.     GTO fraudulently and in violation of the

License Agreement applied for and registered the Licensed

YOGI MARKS which now belong to BIBIJI.

25.     ***The registered Licensed Marks therefore***

***belong to BIBIJI even though they are held in the name of***

***GTO.*** (Emphasis added.)

Defendants' arguments that Plaintiff has not alleged ownership of a registered

mark are patently false.  The allegations of the FAC are sufficient to establish

Plaintiff's 50% ownership of the YOGI and YOGI TEA marks[1] and standing to sue.

**B.    The Allegations of the Complaint Are Sufficient to Establish Inderjit Has Standing to Pursue a Claim for False Designation of Origin / Association Under Section 43a of the Lanham Act**

**1.    Plaintiff's Ownership Allegations are Sufficient**

GTO asserts that Plaintiff "fails to provide any information about the trust or

the other 50% ownership interest.  FAC ¶ 22.  Moreover, Bibiji's assertion of

ownership rights through a trust is itself inadequate because, save for a conclusory

allegation, she provides no fact to support her claim of inheritance." [Motion at pp.

7:27 to 8:3] Defendants are wrong again.  The allegations are sufficient.  Plaintiff

alleges she was Yogi Bhajan's wife (FAC ¶ 22), they created a joint living trust (*Id.*),

the trust owned and controlled the trademark rights and other intellectual property of

Yogi Bhajan (*Id.*),  and that the trust was terminated with Plaintiff receiving 50%

interest to the trademarks and other intellectual property rights related to Yogi

---

[1] There is precedent for multiple ownership of a trademark as a result of the distribution of a living trust.  See e.g. *Iskenderian v. Iskenderian*, 144 Cal.App.4th 1162, 1170, 51 Cal.Rptr.3d 163, 168 (2006) (the court gave effect to the provision in a living trust stating that all rights to the Zankou Chicken trademark were to be divided equally among three children, stating: "The law does not prohibit joint ownership of a trademark.  Indeed, federal law expressly permits concurrent registrations of marks under certain circumstances, including when a court has finally determined that 'more than one person is entitled to use the same or similar marks in commerce.' (15 U.S.C. § 1052(d).)")

1   Bhajan.  (*Id.*)

2       There is no need for Plaintiff to provide any information regarding the other

3   50% owner, because Plaintiff can assert her own rights in the trademarks. *Pearl*

4   *Brewing Co. v. Trans-USA Corp.*(Not Reported in F.Supp.), 1997 WL 340940 (N.D.

5   Tex. 1997); *Steele v. Bulova Watch Co.*, 344 U.S. 280, 73 S.Ct. 252 (1952). (In

6   *Bulova*, the Bulova Watch Co., owner of the trademark "Bulova" in the United States,

7   sued Steele for trademark infringement and unfair competition.); *Dent v. Turpin*, 2 J.

8   & H. 139 (A decision of the High Court of Chancery in 1861, it was held that the

9   plaintiff as co-owner of a trade-mark infringed by the defendant could sue without

10  joining the other co-owner, where what was sought to be recovered was only so much

11  of defendant's profits, as a result of the infringement, as the actual party plaintiff

12  might appear to be entitled to.)

13

14       **2.    Plaintiff Sufficiently Alleges a Commercial Injury**

15       The FAC alleges, in pertinent part as follows:

16           36.    GTO, as a mere licensee, acquired no rights in

17           or to the YOGI MARKS, which at all times remained the

18           property of the licensor.

19                               * * *

20           40.    Defendants acted with actual knowledge of

21           BIBIJI's trademark rights and with knowledge that their acts

22           constitute a false designation and description of the origin,

23           quality, association, affiliation, sponsorship and

24           characteristics of the goods bearing the YOGI MARKS as

25           alleged above after they terminated the license and in their

26           use of the YOGI MARKS on goods not approved by Yogi

27           Bhajan or BIBIJI and not included in the License.

28                               * * *

1           42.    Upon information and belief, Defendants' acts

2    are destroying the exclusive association of the YOGI

3    MARKS with their rightful owners, and has harmed BIBIJI

4    thereby, including, but not limited to commercial losses

5    such as, the loss of royalty income from the licensing of the

6    YOGI MARKS.

7           43.    BIBIJI cannot license the YOGI MARKS to

8    others while Defendants continue to unlawfully use the

9    marks.

10    These allegations establish a commercial injury under Section 43a of the

11   Lanham Act, as Defendants' continued use of the licensed marks after termination of

12   the License Agreement constitutes infringement.

13    As a mere licensee any use by GTO of the YOGI and YOGI TEA marks inured

14   to the benefit of the licensor.

15    A licensee's use inures to the benefit of the licensor-owner

16    of the mark and the licensee acquires no ownership rights in

17    the mark itself.  This is the rule at common law and has been

18    codified in Lanham Act § 5.  Thus, properly licensed use by

19    licensees will serve to fortify the legal and commercial

20    strength of the licensed mark.

21        The licensee of a trademark is in the position of a

22    renter of an apartment, who does not acquire real estate

23    ownership rights, no matter how long the tenancy.  It is

24    clear that use of a mark by a person while such person was a

25    licensee builds up no rights in the mark as against the

26    licensor: "Once a license has expired, use of the formerly

27    licensed trademark constitutes infringement. To say that the

28    licensee has acquired rights that survive the legal

1          termination of the license destroys the entire concept of a

2          license. … No rights are established by such use."

3    3 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION

4    §18:52 (4th ed.) ("McCarthy") (Footnotes omitted).  See also *Miller v. Glenn Miller*

5    *Productions, Inc.,* 454 F.3d 975, 79 U.S.P.Q.2d 1545 (9th Cir. 2006) (rejecting the

6    argument that a licensee could acquire rights in the mark adverse to the licensor);

7    *Watec Co., Ltd. v. Liu,* 403 F.3d 645, 74 U.S.P.Q.2d 1128 (9th Cir. 2005) (court

8    affirmed jury verdict that foreign manufacturer was the owner of the trademark and

9    that the U.S. importer and distributor's licensed use inured to the benefit of the

10   foreign manufacturer); *Norden Restaurant Corp. v. Sons of Revolution*, 51 N.Y.2d

11   518, 434 N.Y.S.2d 967, 415 N.E.2d 956, 210 U.S.P.Q. 944 (1980), cert. denied, 454

12   U.S. 825, 70 L. Ed. 2d 100, 102 S. Ct. 115, 214 U.S.P.Q. 584 (1981) (tenant who

13   operated restaurant in premises under licensed name does not acquire rights to the

14   name); *Bowmar Instrument Corp. v. Continental Microsystems, Inc*., 497 F. Supp.

15   947, 208 U.S.P.Q. 496 (S.D.N.Y. 1980).

16        Once Defendants unilaterally terminated the License Agreement, their

17   continued use of the YOGI and YOGI TEA marks (and other licensed marks) were

18   infringing uses.

19          Once a franchise, dealership or license contract is

20          terminated, there is no doubt that the former franchisee,

21          dealer or licensee has no authorization or consent to

22          continue use of the mark. After the permission to use the

23          mark has ended, use of the mark must cease. ***The***

24          ***terminated dealer who is a "hold-over" and refuses to***

25          ***change the mark is an infringer.  Continued use by former***

26          ***franchisee, dealer or licensee of the mark constitutes a***

27          ***fraud on the public***, since they are led to think that the

28          continuing user is still connected with the trademark owner.

1    As the Eleventh Circuit observed: "Common sense compels

2         the conclusion that a strong risk of consumer confusion

3         arises when a terminated franchisee continues to use the

4         former franchisor's trademarks."

5    4 McCarthy §25:31 (Footnotes omitted, emphasis added.)

6

7         **C.    Plaintiff Has Standing to Cancel GTO's Trademark Registration**

8         GTO asserts Plaintiff has not alleged (1) any real commercial or pecuniary

9    interest in any mark that is or will be affected by GTO's use of its marks; or (2)

10   commercial use of the Licensed Marks.  GTO further asserts Plaintiff fails to address

11   "her presumably limited ability to begin using any such marks based on the status of

12   the trust and her only partial interest therein. [Motion at pp. 8:26 to 9:2] GTO also

13   asserts "no royalties were ever linked to the use of YOGI or YOGI TEA." [Motion at

14   p. 9:3-4] These assertions regarding lack of commercial or pecuniary interest and no

15   commercial use of the marks are patently false, as previously discussed.

16        Also, there is no limit to Plaintiff's ability to use the YOGI and YOGI TEA

17   marks.  See *Iskenderian v. Iskenderian*, 144 Cal.App.4th 1162, 1170, 51 Cal.Rptr.3d

18   163, 168 (2006) (more than one person can own the same trademark).

19        Moreover, the YOGI and YOGI TEA marks were included in the licensed

20   marks, as previously discussed.  Plaintiff, therefore, has standing. *Steele v. Bulova*

21   *Watch Co*., 344 U.S. 280 (1952). (In *Bulova*, the Bulova Watch Co., owner of the

22   trademark "Bulova" in the United States, sued Steele for trademark infringement and

23   unfair competition.)

24

25        **D.    Plaintiff Has Properly Stated Claims upon Which Relief May Be**
            **Granted**

26

27        Fed.R.Civ.P. 8 merely requires "a short and plain statement of the claim

28   showing that the pleader is entitled to relief."  Plaintiff has clearly put Defendants on

1   notice of her claims and the basis for them.  That is all that is required at the pleading

2   stage.  Defendants improperly attempt to argue the merits, and the Court should not

3   address the merits at this stage of the proceedings.  *Sidebotham v. Robison,* 216 F.2d

4   816, 826 (9th Cir. 1955) ("As stated in Moore's Federal Practice, Vol. 1, § 8.01,

5   'Litigation is not an art in writing nice pleadings. It can and should seldom be settled

6   on its merits at the pleading stage * * *.' ")

7

8                  **1.      Plaintiff Properly Alleges a Trademark Infringement Claim**

9          GTO's complaint as to this claim is that the "FAC fails to state any claim for

10   trademark infringement because Bibiji fails to allege ownership or use of the

11   Licensed Marks, the GTO Marks, or any similar mark." [Motion at p. 11:16-18] This

12   is false, as shown by the allegations discussed above.

13         GTO asserts "Bibiji's own allegations undermine any claim that she or her late

14   husband owned the GTO Marks.  She admits that those who originated and first used

15   the term 'Yogi Tea' (i.e. those who own the term) were not herself or her late husband

16   but were Yogi Bhajan's students." [Motion at p. 12:10-13 (citing FAC ¶¶ 13-14)]

17   GTO's argument is directly contradicted by the allegations of the FAC which provide

18   as follows:

19                  13.     Beginning around 1969, after his classes, Yogi

20                  Bhajan would serve his students a special spiced tea he

21                  developed based upon the healing principles of Ayurveda,

22                  which *he began calling "Yogi Tea,"* referring to the *tea*

23                  *that he, Yogi Bhajan had developed*.

24                  14.     In or around 1984, with Yogi Bhajan's

25                  encouragement and assistance, some of his students formed

26                  a company to market and sell this "Yogi Tea."  ***Yogi Bhajan***

27                  ***granted the company***, which was originally known as the

28                  Yogi Tea Company, ***a license to use*** his name and likeness

1        and ***the trademark "Yogi Tea"*** to market teas based on

2        formulas developed by Yogi Bhajan.  (Emphasis added.)

3      As previously discussed, all use of a trademark by a licensee inures to the

4 benefit of the owner (3 McCarthy §18:52; Lanham Act §5), and a licensee who

5 continues to use the trademark after termination of the license is an infringer.  4

6 McCarthy §25:31.

7      GTO's claim that the allegations of ownership and use of the trademarks are

8 not sufficiently specific are without merit.  There is no requirement that a claim for

9 trademark infringement be plead with specificity as in the case of a claim of fraud.

10        The complaint is sufficient if it gives the defendant "fair

11        notice of what the ... claim is and the grounds upon which it

12        rests." [*Bell Atlantic Corp. v. Twombly* (2007) 550 US 544,

13        555, 127 S.Ct. 1955, 1959 (citing *Conley v. Gibson* (1957)

14        355 US 41, 47–48, 78 S.Ct. 99, 103)]  Thus, except in a few

15        types of cases in which pleading "with particularity" is

16        required (see ¶ 8:80 ff.), ***the complaint need not contain***

17        ***detailed factual allegations supporting the claim***. Instead,

18        federal courts and litigants "must rely on summary judgment

19        and control of discovery to weed out unmeritorious claims

20        ... " [*Leatherman v. Tarrant County Narcotics Intelligence*

21        *& Coordination Unit* (1993) 507 US 163, 168–169, 113

22        S.Ct. 1160, 1163; see Bautista v. Los Angeles County (9th

23        Cir. 2000) 216 F3d 837, 843 (citing text)].

24 Schwarzer, Tashima *et al*., The Rutter Group Cal. Prac. Guide Fed. Civ. Pro. Before

25 Trial ("Rutter Group") Ch. 8-A, §8.46 (emphasis added).

26

27       **2.**     **Plaintiff Properly Alleges a Claim under Lanham Act §43a**

28      GTO's argument again shows evidence that it did not even read the FAC.  All

of the elements of the claim which GTO cites to are within the FAC.

(1) the false statement by GTO was its use of the trademarks after termination of the License Agreement.  4 McCarthy §25:31 (Continued use by former licensee of the mark constitutes a fraud on the public, since they are led to think that the continuing user is still connected with the trademark owner.)

(2) & (5) Plaintiff alleges: "With actual knowledge of BIBIJI's ownership rights, ***Defendants continue to use the YOGI trademarks and trade dress*** belonging to BIBIJI to ***promote and advertise Defendants' Goods*** which are not associated, affiliated, connected with, or authorized, approved, produced or sponsored by BIBIJI since Defendants' termination of the license." FAC ¶ 28 (incorporated by reference into Claim II) (emphasis added).

(3) & (4) Plaintiff alleges: "Defendants' unlawful use, including use after termination of the license, of BIBIJI'S trademarks and intellectual property is likely to cause confusion, deception, or mistake as to the source, association, affiliation or sponsorship of Defendants' Goods."  FAC ¶ 30 (incorporated by reference into Claim II).

(6) Plaintiff alleges: "Upon information and belief, Defendants' acts are destroying the exclusive association of the YOGI MARKS with their rightful owners, and has harmed BIBIJI thereby, including, but not limited to commercial losses such as, the loss of royalty income from the licensing of the YOGI MARKS."  FAC ¶ 42.

Plaintiff's allegations are sufficient to put Defendant on notice of her claim, and that is all that is required under Rule 8.

### 3.    Plaintiff Properly States a Claim for Unfair Competition

GTO asserts Plaintiff "has failed to state any claim for unfair competition or passing off because, again, she has not made any allegation of use of the Licensed Marks, the GTO Marks, or any mark similar to either the License Marks or the GTO

1   Marks." [Motion at p. 13:24-26]  This objection fails for the same reasons as all the

2   others discussed above.  A licensee's continued use of a trademark is the essence of a

3   passing off claim.  4 McCarthy §25:31.

4          GTO again tries to argue the merits, asserting Plaintiff "alleges that she cannot

5   enter into license agreements with other parties because of GTO's alleged

6   unauthorized use (FAC ¶ 51), but she has not provided any factual support this claim

7   or alleged that she has endeavored to enter into such agreements" and "has failed to

8   establish that she *could* license the License Marks as only a 50% owner, making no

9   allegations of the circumstances or limitations of her purported joint ownership" and

10  "has also failed to establish any existing market in which she could enter into such a

11  license agreement."  As discussed above, this is not appropriate at the pleading stage:

12  "the complaint need not contain detailed factual allegations supporting the claim."

13  Rutter Group, Ch. 8-A, §8.46.  Nor does Plaintiff need to prove her case at the

14  pleading stage.  GTO can file a motion for summary judgment at the appropriate time

15  if it does not believe Plaintiff can factually support her claims.

16

17          **4.    Plaintiff Has Properly Alleged a Claim for Unfair Trade
                     Practices**

18

19          The basis of GTO's argument is that it is the rightful owner of the trademarks

20  in issue.  However, that is not the case.  As discussed above, GTO was a mere

21  licensee of the marks and all of its use inured to the benefit of Plaintiff.  GTO's

22  assertion that Plaintiff "does not allege that GTO is deceiving any members of the

23  public by promoting its own products" is demonstrably false.  Plaintiff alleges:

24                  47.    . . . Defendants are claiming ownership of the

25                  YOGI MARKS and a right to use them on goods when, in

26                  fact, Defendants have only ever been a licensee of said

27                  marks.

28  //

48.     Defendants have terminated the license agreement and refused to pay any license fees.

49.     Defendants are attempting to appropriate the YOGI MARKS for their own use to the exclusion of the rightful owners.

50.     Defendants are creating confusion in the marketplace as to the ownership, association, affiliation, and sponsorship of the YOGI MARKS by claiming ownership in themselves.

These allegations are incorporated by reference into Plaintiff's claim for Unfair Trade Practices.  FAC ¶ 56.  As discussed above, continued use of a trademark by a licensee is a fraud on the public.  4 McCarthy §25:31.

5.     **The Statute of Limitations Has Not Run on Plaintiff's Claim for Unfair Trade Practices**

GTO asserts the statute of limitations bars Plaintiff's claim for unfair trade practices.  That is not the case, because Defendants' infringement is a continuing wrong.

"[E]ach allegedly infringing display of Defendant's service name on products, advertisements, etc., could create a separate cause of action for unfair competition and trademark infringement. See, for example, RESTATEMENT (THIRD) OF UNFAIR COMPETITION, § 31 (1995); Callman, UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES (4th ed.) § 22.30 (trademark infringement is typically a continuing wrong) and *Derrick Manufacturing Corp. v. Southwestern Wire Cloth*, 934 F.Supp. 796 (S.D. Tex. 1996)

//

1          (construing a similar statute of limitations for an unfair

2          competition claim).

3  *Suh v. Yang*, 987 F.Supp. 783, 796 (N.D. Cal. 1997).  GTO continues to infringe the

4  trademarks to this day.  Therefore, the statute of limitations does not bar Plaintiff's

5  claim.

6

7          **6.        Plaintiff Properly States a Claim for Trademark Cancellation**

8          GTO asserts Plaintiff "does not state the particular circumstances of the fraud."

9  [Motion at p. 16:23-24]  That is false.  Plaintiff specifically alleges the acts which

10  constitute the fraud and the damage caused thereby:

11  •        GTO was a mere licensee of the marks who acquired no rights in the

12          marks.  FAC ¶ 36

13  •        GTO applied for registration despite the fact it had no rights in the

14          marks.  FAC ¶ 83

15  •        GTO did not disclose to the licensor that it was applying for registration

16          of the marks.  *Id.*

17  •        GTO falsely claimed under oath that no other person had a senior right to

18          the marks.  *Id.*

19  •        BIBIJI is unable to license the YOGI MARKS to others while

20          Defendants continue to unlawfully use the YOGI MARKS and has lost

21          royalties and income.   FAC ¶ 51.

22  •        Defendants have been unjustly enriched by their acts of unfair

23          competition to the exclusion of BIBIJI.  FAC ¶ 52.

24  •        Upon information and belief, Defendants have intentionally

25          misappropriated the commercial value of the YOGI MARKS, have

26          unlawfully acted to damage the source-identifying quality of said marks,

27          and have adversely affected the value of the goodwill and reputation

28          associated with those marks. FAC ¶ 53.

1    These allegations are sufficient under Rule 9.

2            The point of the rule is to provide enough notice to each

3            defendant of the misrepresentations the defendant made so

4            that he can answer and otherwise defend himself. *Deutsch*

5            *v. Flannery,* 823 F.2d 1361 (9th Cir.1987).  The rule does

6            not require extensive factual pleading.  As an exception to

7            rule eight's requirement that pleadings should be simple,

8            concise and direct, rule 9 is read restrictively, not

9            expansively.  5 C. Wright & A. Miller, FEDERAL PRACTICE

10           & PROCEDURE §1297 at 615 (2d ed. 1990).  It does not

11           require plaintiffs to plead extensive facts. It only requires

12           that plaintiffs plead the circumstances of the fraud.

13   *Gardner v. Investors Diversified Capital, Inc.*, 805 F.Supp. 874, 877 (D. Colo. 1992).

14           GTO knows the factual basis of its fraud.  It cannot feign ignorance.  Plaintiff

15   has sufficiently plead the factual circumstances constituting the fraud to apprise

16   Defendants of the claim against them.

17           GTO's alternative ground, that the fraud claim should fail because it is plead as

18   a breach of contract claim (Motion at p. 16:22-27), likewise lacks merit.  "It is not

19   unusual, however, for a plaintiff to assert several different causes of action, arising

20   out of the same facts . . . ."  *Smith v. Ben Bennett, Inc*., 133 Cal.App.4th 1507, 1525,

21   35 Cal.Rptr.3d 612, 623 (2005).

22

23           **E.    This Court Should Not Dismiss or Stay this Case Based on the**

24           **Arbitration Clause in the License Agreement Because GTO'S**
             **Post-Termination Infringement and Its Use of Licensed Marks on**

25           **Goods Never Licensed Is Not Arbitrable**

26           GTO insists that the license agreement does not extend to the YOGI or YOGI

27   TEA marks.  The Court should accept GTO's contention as a judicial admission for

28   the purposes of this motion because if those marks were never the subject of the

1   Agreement, the Agreement's arbitration provision does not apply.  The claims in the
2   FAC do not require reference to or interpretation of the License Agreement for
3   resolution because GTO says those at-issue marks were never part of the Agreement.
4   All conduct complained of occurred after GTO terminated the License Agreement or
5   was never within the scope of the license. The determination of ownership of the
6   YOGI TEA mark does not require any interpretation of the License Agreement.
7   Neither does a determination of infringement of that mark.

8          This Court cannot refer this case to arbitration without determining that the
9   arbitration provision actually applies. As the Ninth Circuit noted in *Jackson v. Rent-*
10  *A-Center West, Inc*. 581 F.3d 912 ( 9th Cir 2009):

11              "The duty to arbitrate being of contractual origin, a
12              compulsory submission to arbitration cannot precede
13              judicial determination that the ... agreement does in fact
14              create such a duty." *916 *John Wiley & Sons, Inc. v.*
15              *Livingston*, 376 U.S. 543, 547, 84 S.Ct. 909, 11 L.Ed.2d 898
16              (1964). Indeed, as a matter of federal arbitration law, a court
17              may not compel arbitration until it is "satisfied that the
18              making of the agreement for arbitration or the failure to
19              comply therewith is not in issue." 9 U.S.C. § 4 (2000).

20         As the Supreme Court held in *First Options of Chicago, Inc. v. Kaplan*, 514
21  U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995):

22              [G]iven the principle that a party can be forced to arbitrate
23              only those issues it specifically has agreed to submit to
24              arbitration, one can understand why courts might hesitate to
25              interpret silence or ambiguity on the "who should decide
26              arbitrability" point as giving arbitrators that power, for
27              doing so might too often force unwilling parties to arbitrate

28  //

**OPPOSITION TO MOTION TO DISMISS**
**CASE NO.:CV 10-882-JFW (VBKx)**

1        a matter they reasonably would have thought a judge, not an

2        arbitrator, would decide.

3 The Supreme Court has "determined that 'arbitration is a matter of contract and a

4 party cannot be required to submit to arbitration any dispute which he has not agreed

5 so to submit. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588,

6 154 L.Ed.2d 491 (2002) (quoting, *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S.

7 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)); *see also Gateway Coal Co. v.*

8 *United Mine Workers of Am.,* 414 U.S. 368, 374, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974)

9 ("The law compels a party to submit his grievance to arbitration only if he has

10 contracted to do so."). "[A]rbitration is simply a matter of contract between the

11 parties; it is a way to resolve those disputes-but only those disputes-that the parties

12 have agreed to submit to arbitration." *First Options*, *supra*, 514 U.S. at 943.

13      The issues in this case far transcend those merely "arising out of or relating to"

14 the contract between the parties.  They involve uses never the subject of the License

15 and uses made after GTO expressly terminated the License Agreement.  It is

16 inconceivable that the parties intended such  disputes to be settled by arbitration.

17      Section 3 of Title 9 U.S.C. authorizes the court to grant a stay "upon being

18 satisfied that the issue involved * * * is referable to arbitration."  The written

19 agreement between the parties provides for the arbitration of any dispute or

20 disagreement between the parties "arising out of or relating to" the License

21 Agreement; but the controversy between the parties, certainly the claim of the

22 Plaintiff, is one involving the issue of unfair competition.  The action sounds not in

23 contract but in tort, and the issue is not defined by the question of the rights of the

24 parties under the agreement.

25      If the dispute were confined to issues of whether or not the contract was

26 violated, it would be referable to arbitration; but "the issue involved," is much

27 broader in scope, requiring a consideration of facts and factors beyond the contract.

28 See *International Union, United Automobile Aircraft v. Benton Harbor Malleable*

*Industries*, 242 F.2d 536, 539, 542 (6th Cir. 1957).  Even if any existing subordinate contract issues were resolved by arbitration, "the issue involved" would remain. Indeed, in the absence of a license agreement and of defendant's operation under it, the broad issue would remain.  No arbitration decision interpreting the contract could determine the controversy at bar.  To delay the suit and require arbitration would merely add to the "costliness and delays of litigation" it was the purpose of the Arbitration Act to eliminate.  68 Cong., 1st Sess., House of Rep. Report No. 96.  For the controversy between the parties would still have to be decided by this court.

While the parties have made an agreement to arbitrate, the filing of suit does not constitute a failure, neglect or refusal of the respondent-plaintiff to perform its agreement under 9 U.S.C. 4.  *Wyatt Earp Enterprises v. Sackman, Inc.*, 157 F.Supp. 621, 626-27, 116 U.S.P.Q. 122 (S.D.N.Y. 1958).  See also *A. & E. Plastik Pak Co. v. Monsanto Co.*, 396 F.2d 710 (9th Cir. 1968) (district court abused discretion by not enjoining arbitration of issues relating to whether licensee of know-how had promised not to sell product in competition with licensor; whether licensee had broken that promise; and whether licensor was justified in repudiating its commitment to purchase product from licensee).

### F.   This Court Cannot Issue an Order Compelling Arbitration Outside of the Central District of California

Section 3 of the FAA gives courts the power to stay an action upon being satisfied that the issue before the court is referable to arbitration.  See 9 U.S.C. § 3. However, the power to dismiss and compel arbitration is limited in terms of venue, and a court may only compel arbitration within the judicial district in which the petition to compel has been filed. *Id*. § 4. Thus, where arbitration is to proceed in another district, as in this case, only a stay is available. See *Provident Bank v. Kabas,* 141 F.Supp.2d 310, 318 (E.D.N.Y.2001) (citing *Ryan v. Allen*, 992 F.Supp. 152, 154-55 (N.D.N.Y.1998)); *Argus Media Ltd. v. Tradition Financial Services Inc.*, 2009

1   WL 5125113, 2 (S.D.N.Y. 2009).

2   *Continental Grain Co. v. Dant & Russell*, 118 F.2d 967, 968-69 (9th Cir. 1941)

3   interprets section 4 of the Federal Arbitration Act as limiting courts to ordering

4   arbitration within the district in which the suit was filed. The Ninth Circuit has

5   indirectly confirmed this interpretation, stating that "***by its terms, §4 only confines***

6   ***the arbitration to the district in which the petition to compel is filed.***" *Textile*

7   *Unlimited, Inc. v. A..BMH and Co., Inc.*, 240 F.3d 781, 785 (9th Cir. 2001).

8   GTO asks this Court to defy the instruction of the Ninth Circuit and order

9   arbitration in Portland, Oregon, based on non-controlling authority from the Fifth

10  Circuit Court of Appeals.  This Court should ignore GTO's invitation to error and

11  adhere to the teaching of the Ninth Circuit.

12  The Ninth Circuit position is clear.  This Court can only compel arbitration

13  within the Central District of California, and cannot compel arbitration in Oregon as

14  GTO requests.

15

16  **IV.   CONCLUSION**

17  For the foregoing reasons, the Court should deny GTO's Motion to Dismiss the

18  First Amended Complaint and in the Alternative to Say Proceedings and Compel

19  Arbitration in its entirety.

20  If the Court is inclined to dismiss any of Plaintiff's claims on the basis of a lack

21  of standing or failure to state a claim, Plaintiff asks that the Court grant leave to

22  amend.

23

24  Dated: May 24, 2010                    THE SONI LAW FIRM

25                                          By: /s/ M. Danton Richardson
26                                              Surjit P. Soni
                                                M. Danton Richardson
27                                              Attorneys for Plaintiff,
                                                BIBIJI INDERJIT KAUR PURI

28

**OPPOSITION TO MOTION TO DISMISS**
**CASE NO.:CV 10-882-JFW (VBKx)**

## CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18, and not a party to the within action; my business address is 35 North Lake Avenue, Suite 720, Pasadena, California 91101.

On May 24, 2010, I served the foregoing document described as **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** on the interested parties as follows:

> Kenneth R. Davis II davisk@lanepowell.com
> Parna A. Mehrbani mehrbanip@lanepowell.com
> Tiffany Scott scottt@lanepowell.com
> JANE POWELL PC
> 601 SW Second Avenue, Suite 2100
> Portland, OR 97204-3158
> (503)778-2100
> (502)778-2200 Fax
>
> Stephen S. Smith ssmith@greenbergglusker.com
> Rachel Valadez rvaladez@greenbergglusker.com
> GREENBERG GLUSKER FIELDS CLAMAN &
> MACHTINGER LLP
> 1900 Avenue of the Stars, 21st Floor
> Los Angeles, CA 90065
> (310)553-3610
> (310)553-0687 Fax

[  ]  (MAIL) I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. postal service on that same day, with postage thereon fully prepaid at Pasadena, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[  ]  (PERSONAL SERVICE) I caused the above referenced document to be personally served by hand on the addressees listed above.

[X]  (VIA ELECTRONIC MAIL) I caused such document to be delivered to addressees listed above via email delivery.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 24, 2010, at Pasadena, California.

                    /s/Teresa Tsai
                    Teresa Tsai