KENNETH R. DAVIS II (OSB 971132)
davisk@lanepowell.com
PARNA A. MEHRBANI (OSB 053235)
mehrbanip@lanepowell.com
TIFFANY SCOTT (WSB 41740)
scottt@lanepowell.com
LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OR 97204-3158
Telephone: 503.778.2100
Fax: 503.778.2200

STEPHEN S. SMITH (CSB 166539)
ssmith@greenbergglusker.com
RACHEL VALADEZ (CSB 252415)
rvaladez@greenbergglusker.com
GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP
1900 AVENUE OF THE STARS, 21ST FLOOR
LOS ANGELES, CA  90065
Telephone: 310.553.3610
Fax: 310.553.0687

Attorneys for Defendant
GOLDEN TEMPLE OF OREGON, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIBIJI INDERJIT KAUR PURI, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>GOLDEN TEMPLE OF OREGON, LLC, an Oregon limited liability corporation; DOES 1 through 10,<br><br>    Defendants. | Case No.  CV10-882 JFW - VBK<br><br>**DEFENDANT GOLDEN TEMPLE OF OREGON, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND, IN THE ALTERNATIVE, TO STAY PROCEEDINGS AND COMPEL ARBITRATION**<br><br>Date: Monday, June 14, 2010<br>Time: 1:30 p.m.<br>Place: Courtroom 16, 312 N. Spring St., Los Angeles, CA 90012 |

31902-00002/1735099.1

REPLY SUPPORTING MOTION TO
DISMISS FAC OR STAY PROCEEDINGS

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................. 1
II. ARGUMENT ......................................................................................................... 2
    A. Bibiji Lacks Standing .................................................................................. 2
        1. Bibiji Has Not Alleged Ownership of the Disputed Marks ....... 2
        2. Bibiji Has Not Alleged Any Commercial Injury ...................... 5
        3. Bibiji Has Not Alleged a Personal Interest in the Disputed Marks ................................................................................................ 6
    B. Bibiji Has Failed to State a Claim .............................................................. 7
        1. Bibiji Has Failed to State a Claim for Trademark Infringement ................................................................................... 7
        2. Bibiji Has Failed to State a Claim for False Designation of Origin ............................................................................................ 7
        3. Bibiji Has Failed to State an Unfair Competition Claim ........... 8
        4. Bibiji Has Failed to State an Unfair Trade Practices Claim ...... 8
        5. The Statute of Limitations Has Run on Bibiji's Unfair Trade Practices Claim as It Relates to Conduct Prior to 2006 ................................................................................................. 9
        6. Bibiji Has Failed to State a Trademark Cancellation Claim ............................................................................................. 9
    C. Bibiji's Claims Are Subject to the Arbitration Clause in the License Agreement, and this Case Must Therefore Be Either Dismissed or Stayed, with Court-Ordered Arbitration in Portland, Oregon ........................................................................................ 10
        1. The Arbitration Clause Applies to Bibiji's Claims .................. 10
        2. The Court Can Dismiss this Case for Improper Venue Pursuant to Rule 12(b)(3) ............................................................ 13
        3. The Court Should Compel Arbitration ..................................... 13
III. CONCLUSION .................................................................................................... 14

# TABLE OF AUTHORITIES

Page

**CASES**

*A&E Plastik Pak Co. v. Monsanto Co.*,
   396 F.2d 710 (9th Cir. 1968)..................................................................... 11

*Altshul Stern & Co. v. Mitsui Bussan Kaisha, Ltd.*,
   385 F.2d 158 (2d Cir. 1967)....................................................................... 12

*American Safety Equipment Corp. v. J. P. Maguire & Co.*,
   391 F.2d 821 (2d Cir. 1968)....................................................................... 11

*Argueta v. Banco Mexicano, S.A.*,
   87 F.3d 320 (9th Cir. 1996)........................................................................ 13

*Ashcroft v. Iqbal*,
   129 S.Ct. 1937 (2009) ...................................................................... 1, 3, 7, 8

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*,
   174 F.3d 1036 (9th Cir. 1999)..................................................................... 2

*Durango Herald, Inc. v. Riddle*,
   719 F. Supp. 941 (D. Colo. 1988)............................................................ 5, 6

*Grupo Gigante SA de CV v. Dallo & Co., Inc.*,
   391 F.3d 1088 (9th Cir. 2004)..................................................................... 2

*Hailicki Folms, LLC v. Sanderson Sales and Marketing*,
   547 F.3d 1213 (9th Cir. 2008)..................................................................... 6

*Hana Financial, Inc. v. Hana Bank*,
   500 F.Supp.2d 1228 (C.D.Cal. 2007).......................................................... 9

*Int'l Union, United Automobile Aircraft v. Benton Harbor Malleable Industries*,
   242 F.2d 536 (6th Cir.), cert. den., 355 U.S. 814 (1957)......................... 11

*Iskenderian v. Iskenderian*,
   144 Cal. App. 4th 1162 (2006)................................................................ 6, 7

*Jack Russell Terrier Network of Northern Ca. v. American Kennel Club, Inc.*,
   407 F.3d 1027 (9th Cir. 2005)..................................................................... 6

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
   304 F.3d 829 (9th Cir.), cert. den., 537 U.S. 1047 (2002) ........................ 7

*Kamakazi Music Corp. v. Robbins Music Corp.*,
   684 F.2d 228 (2d Cir. 1982)....................................................................... 12

*Mediterranean Enterprises, Inc. v. Ssangyong Corp.*,
   708 F.2d 1458 (9th Cir. 1983)................................................................... 12

# TABLE OF AUTHORITIES
(continued)

Page

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*,
  460 U.S. 1 (1983) ..................................................................................... 12

*Nghiem v. NEC Electronic, Inc.*,
  25 F.3d 1437 (9th Cir.), *cert. den.*, 513 U.S. 1044 (1994) ...................... 11

*Norcom Electronics Corp. v. CIM USA Inc.*,
  104 F. Supp. 2d 198 (S.D.N.Y. 2000) ..................................................... 12

*Orange County Choppers, Inc. v. Goen Technologies Corp.*,
  374 F. Supp. 2d 372 (S.D.N.Y. 2005) ..................................................... 12

*Saucy Susan Products, Inc v. Allied Old English, Inc.*,
  200 F. Supp. 724 (S.D.N.Y. 1961) .......................................................... 11

*Schoenduve Corp. v. Lucent Technologies, Inc.*,
  442 F.3d 727 (9th Cir. 2006) ................................................................... 12

*Shearson Lehman Hutton, Inc. v. Wagoner*,
  944 F.2d 114 (2d Cir. 1991) .................................................................... 12

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) ................................................................... 8

*ValueSelling Assocs., LLC v. Temple*,
  No. 09 CV 1493 JM, 2009 WL 3736264 (S.D. Cal. Nov. 5, 2009) ........ 10

*Wyatt Earp Enterprises, Inc. v. Sackman, Inc.*,
  157 F. Supp. 621 (S.D.N.Y. 1958) .................................................... 11, 12

**FEDERAL STATUTES AND RULES**

9 U.S.C. § 3 ................................................................................................. 13

9 U.S.C. § 4 ........................................................................................... 13, 14

15 U.S.C. § 1114(1) ...................................................................................... 2

Fed. Rules of Civ. Proc. Rule 9(b) ................................................................ 9

Fed. Rules of Civ. Proc. Rule 8 ................................................................. 1, 9

Fed. Rules of Civ. Proc. Rule 12(b)(3) ........................................................ 13

**OTHER AUTHORITIES**

Lanham Act § 32 ........................................................................................... 2

Lanham Act § 43(a)(1)(B) ............................................................................ 5

# I. INTRODUCTION

Citing largely outdated authorities, Plaintiff Bibiji Inderjit Kaur Puri ("Bibiji") asks the Court to ignore the myriad deficiencies in her First Amended Complaint ("FAC"), contending that merely by alleging the barest elements of her claims in conclusory fashion, she has satisfied the pleading requirements of Federal Rules of Civil Procedure 8 and (where applicable) 9 (see Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss Plaintiff's FAC ("Opp."), at 2-4, 12-13, 19). But as the Supreme Court has recently made clear, federal notice pleading standards are not an invitation for litigants to pursue frivolous claims based on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A plaintiff must allege *facts*—not legal conclusions disguised as facts—sufficient to state "a *plausible* claim for relief[.]" *Id.* at 1949-50 (emphasis added). Here, once Bibiji's conclusory allegations are disregarded (as they must be, *id.* at 1950), she simply has not alleged sufficient facts to show either that she has standing to pursue these claims against defendant Golden Temple of Oregon, LLC ("GTO") or that she has any claim for relief against GTO. Accordingly, the FAC should be dismissed.

Even if the Court concludes that Bibiji has adequately pled one or more claims for relief, the Court should still dismiss the FAC because this case is in the wrong venue. All of Bibiji's claims are subject to an agreement to arbitrate in Portland, Oregon. Bibiji's sophistic arguments to the contrary (Opp. at 19-22) are unavailing. The Court should therefore dismiss (or, at the very least, stay) this case and compel Bibiji to arbitrate her claims in the correct venue.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

31902-00002/1735099.1

## II. ARGUMENT

### A. Bibiji Lacks Standing.

#### 1. Bibiji Has Not Alleged Ownership of the Disputed Marks.

Bibiji contends that the FAC alleges that she is a 50% owner of the "Yogi" and "Yogi Tea" trademarks through an inheritance from her and her husband's living trust, and she therefore has standing to sue for their alleged infringement (Opp. at 5-8).[1] But her argument fails at the very first step, because she never alleges facts sufficient to establish that her husband, Yogi Bhajan, ever owned those marks. He thus could not have transferred them to the trust, and she could not have inherited an interest in them from the trust.

Paragraph 13 of the FAC states that "[b]eginning around 1969, after his classes, Yogi Bhajan would serve his students a special spiced tea he developed * * *, which he began calling 'Yogi Tea' * * *"[2] While Bibiji alleges that Yogi Bhajan *coined the term* "Yogi Tea," she does not allege that he ever used it *in commerce*. Rather, according to the FAC, he simply used the term to refer to tea that he gave away to his students. This activity is insufficient to establish a trademark in the term "Yogi Tea" either under the Lanham Act or at common law. *See, e.g., Grupo Gigante SA de CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1093 (9th Cir. 2004) ("Under the principle of first in time equals first in right, priority ordinarily comes with earlier *use* of a mark *in commerce*. It is '*not enough to have invented the mark first * * *'") (emphasis added; citation omitted); *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1051 (9th Cir. 1999) ("The Lanham Act grants trademark protection only to marks that are used to identify and to distinguish goods or services in commerce—which typically

---

[1] To the extent Count I of the FAC is based on Section 32 of the Lanham Act, even *ownership* is insufficient to confer standing; a plaintiff must be a trademark *registrant*. 15 U.S.C. § 1114(1). Bibiji does not even address this point, and thus apparently concedes that she has not pled a claim under Section 32.
[2] Interestingly, in her original Complaint, Bibiji alleged that Yogi Bhajan's *students* were the ones who originated the term "Yogi Tea" (Compl. ¶ 13).

occurs when a mark is used in conjunction with the actual sale of goods or services"; mere registration of Internet domain name is insufficient).

Paragraph 14 of the FAC alleges that, when some of Yogi Bhajan's students formed a company to sell this tea, "Yogi Bhajan granted the company * * * a license to use his name and likeness *and the trademark 'Yogi Tea' * * *"* (emphasis added). But this allegation is a legal conclusion disguised as a fact. As shown above, Bibiji did not allege any facts sufficient to establish that Yogi Bhajan himself had ever established a trademark in the term "Yogi Tea." Simply alleging that the term "Yogi Tea"—which Yogi Bhajan had never used in commerce and, as far as the FAC alleges, had never even contemplated using in commerce—was a "trademark" that Yogi Bhajan could "license" to GTO's predecessor is insufficient. *See Iqbal*, 129 S.Ct at 1949-50 (court must disregard mere legal conclusions on motion to dismiss).

Paragraphs 15, 16, and 19 of the FAC similarly allege that "Yogi" and "Yogi Tea" are licensed marks under the License Agreement with GTO. But a review of the actual License Agreement—which the Court may consider on this motion to dismiss—shows those allegations to be false. Section 1.4 of the License Agreement defines the term "Licensed Trademarks" as any "Marks as defined in Section 1.2 *and* listed on the attached Exhibit 1.4" (Davis Decl., Ex. A at 4 (emphasis added)). Section 1.2 defines "Marks" as any "trademark, servicemark, logo, insignia, seal, design, or other symbol used by or identifying [Yogi Bhajan], specifically including the name of [Yogi Bhajan], [or] any likeness of him" (*id.*). Exhibit 1.4 contains only a two marks—slightly different versions of the image and signature of Yogi Bhajan (*id.* at 13-14). Under a natural reading of the conjunctive "and" in Section 1.4, these two marks are the only "Licensed Trademarks," because they are the only marks that *both* fit the definition in Section 1.2 *and* are listed on Exhibit 1.4.

Bibiji argues for an unnatural reading of the word "and," claiming that here it means that "Licensed Trademarks" include *either* the marks defined in Section 1.2

1 *or* those listed on Exhibit 1.4 (Opp. at 5-6). She asserts that GTO's reading would render Section 1.2 superfluous, thereby violating principles of contract construction (*id.*). But Bibiji's reading suffers from the same problem: because the marks listed on Exhibit 1.4 clearly fall within the definition of "Marks" in Section 1.2, Exhibit 1.4 would be rendered superfluous.

Moreover, even under Bibiji's preferred reading, "Yogi" and "Yogi Tea" are not among the Licensed Trademarks, because neither is a "trademark, servicemark, logo, insignia, seal, design, or other symbol used by or identifying [Yogi Bhajan], specifically including the name of [Yogi Bhajan], [or] any likeness of him" (Davis Decl. Ex. A at 4). As discussed above, even if Yogi Bhajan "used" the term "Yogi Tea" as alleged in FAC § 13, he did not use it *in commerce*, and therefore did not use it as a "trademark." And the term "Yogi" is too generic to be considered as "identifying" Yogi Bhajan. *See Webster's Third New Int'l Dictionary*, 2653 (defining "yogi" as "a person who practices yoga"; "an adherent of Yoga philosophy"; or "a markedly reflective or mystical person").

The overall context of the License Agreement further confirms that the parties did not intend "Yogi Tea" to be among the "Licensed Trademarks." Section 5.2 provides that "Licensee agrees that it shall not apply for registration * * * of any Licensed Trademarks * * *" (Davis Decl. Ex. A at 6). But of course, GTO had *already* registered the "Yogi Tea" mark *in 1996*—eight years *before* the parties entered into the License Agreement (see FAC Ex. F). GTO's registration of that trademark was a matter of public record, for all the world to see. It would simply make no sense for the parties to agree that GTO would not do something it had already done, and that everyone knew it had done. Bibiji's current interpretation of the License Agreement is completely inconsistent with her own actions. If Bibiji or her predecessor considered the trademarks at issue to be a subject of the License Agreement, it makes no sense that all the parties, including Bibiji and her predecessor in interest, Yogi Bhajan, voiced absolutely no objection whatsoever

when Golden Temple registered the YOGI TEA mark and continued to enforce it over the next 14 years. The only reasonable conclusion is that the parties never intended YOGI TEA to be among the "Licensed Trademarks."

Finally, even if she had adequately alleged Yogi Bhajan's initial ownership of the disputed marks (which she has not), Bibiji has not sufficiently alleged how she became a 50 percent owner of the marks, or how that partial interest entitles her to sue to enforce the marks. She alleges in conclusory fashion that she inherited this interest through her and her husband's living trust (FAC ¶ 22), but she has no allegations concerning what the terms of the allocation of the trademark asset were, who the other 50 percent owners are, or how as a joint owner of a trademark she has authority to enforce the mark without the participation of the other owners. Without allegations concerning these facts, the Court cannot conclude that she has demonstrated an actual ownership rights, particularly any right to enforce the disputed marks without the participation of the alleged co-owner. *See Durango Herald, Inc. v. Riddle*, 719 F. Supp. 941, 945 (D. Colo. 1988) (co-owners of trademark "have reciprocal duties not to use the [mark] for their individual benefit in a manner which burdens or injures only the other party").

Bibiji has not alleged facts establishing that Yogi Bhajan ever owned trademarks in the terms "Yogi" or "Yogi Tea." She therefore has not alleged facts establishing that she has an ownership interest in those marks through him. Bibiji's claim for trademark infringement (Count I of the FAC) must be dismissed for lack of standing.

### 2. Bibiji Has Not Alleged Any Commercial Injury.

Bibiji points to her allegations in paragraphs 42-43 of the FAC that GTO's unauthorized use on the disputed marks has harmed her through (1) losses of royalty income and (2) an inability to license the marks to others, and contends these allegations are sufficient to establish a "commercial injury" for purposes of Section 43(a)(1)(B) of the Lanham Act (Opp. at 9-10).

1   First, the loss of royalty income is insufficient because it is not a "competitive" injury. *Jack Russell Terrier Network of Northern Ca. v. American Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005) (injury must be "harmful to the plaintiff's ability to compete with the defendant").

Second, Bibiji has not alleged facts establishing that she even *could* license the disputed marks to others. As discussed above, she has not alleged facts supporting *any* actual ownership interest in the "Yogi" or "Yogi Tea" marks. Even if she had, she alleges that she is only a 50% owner of the marks through her inheritance from her and her husband's living trust (FAC ¶ 22). As an alleged co-owner of a trademark, Bibiji cannot unilaterally use (or license) the mark, because that unilateral use may be contrary to the other co-owners' interests in the mark. *See Durango Herald*, 719 F. Supp. at 945 (co-owners of trademark "have reciprocal duties not to use the [mark] for their individual benefit in a manner which burdens or injures only the other party"). The FAC's allegations do not establish any "commercial injury," and Bibiji's false advertising claim (Count II) must therefore be dismissed for lack of standing.

### 3. Bibiji Has Not Alleged a Personal Interest in the Disputed Marks.

As discussed in GTO's opening brief, to have standing to cancel a trademark, a party must have a "real" and "personal" interest in the mark. *Hailicki Folms, LLC v. Sanderson Sales and Marketing*, 547 F.3d 1213, 1228-29 (9th Cir. 2008). That is, the plaintiff must allege "an actual and pecuniary interest" in the mark that is harmed by the registration. *Id.* As discussed above, Bibiji has alleged neither any ownership interest in the disputed marks nor any commercial injury to herself. Her trademark cancellation claim must be dismissed for lack of standing.

Bibiji protests that "there is no limit to [her] ability to use the YOGI and YOGI TEA marks[,]" even though she has alleged only a partial interest in those marks (Opp. at 12). But the case she cites in support of this proposition, *Iskenderian v. Iskenderian*, 144 Cal. App. 4th 1162, 1170-72 (2006), simply states

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

that individuals can be co-owners of the same trademark—*if* they are acting collaboratively in a single business enterprise. The court acknowledged, however, that if co-owners engaged in "fragmented" use of the mark without some contractual arrangement regarding its use, consumer confusion was likely to result—defeating the very purpose of trademark protection—and joint ownership of a trademark in such circumstances would be highly problematic. *Id.* Since Bibiji has alleged nothing concerning her alleged co-owners, she cannot claim that there is "no limit" to what she can do with the trademark.

**B.   Bibiji Has Failed to State a Claim.**

   **1.   Bibiji Has Failed to State a Claim for Trademark Infringement.**

As discussed above (pp. 2-5), Bibiji has not alleged facts sufficient to establish an ownership interest in the disputed marks. Her failure to allege this element is fatal to her trademark infringement claim (FAC Count I). In her opposition to this motion, Bibiji merely points to the same allegations that GTO has already shown to be inadequate (Opp. at 13-14).

   **2.   Bibiji Has Failed to State a Claim for False Designation of Origin.**

Bibiji points to conclusory allegations in the FAC in an effort to show that she has pled the six elements of a claim for false designation of origin (Opp at 14-15). But again, conclusory allegations are insufficient; Bibiji must plead *facts* to survive a motion to dismiss. *Iqbal*, 129 S.Ct at 1949-50. Here, Bibiji has not alleged that she or her late husband ever used the disputed marks in commerce in connection with any product. Since Bibiji and her alleged predecessors in interest do not have (and never had) any commercial product of their own, there can be no "direct diversion of sales from [Bibiji] to defendant," or any "lessening of goodwill associated with plaintiff's product." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir.), *cert. den.*, 537 U.S. 1047 (2002). Thus, at the very least, Bibiji has failed to allege any cognizable injury sufficient to sustain a false designation of origin claim (FAC Count II).

### 3. Bibiji Has Failed to State an Unfair Competition Claim.

As GTO noted in its opening brief, "[t]he common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008). Bibiji asserts that "[a] licensee's continued use of a trademark [after the license ends] is the essence of a passing off claim" (Opp. at 16). But that theory only holds if the licensor itself has products associated with the trademark, so that the former licensee's continued use makes it appear that its products are those of the licensor. Here, the FAC does not allege that anyone other than GTO and its predecessors ever used the disputed marks in commerce. There is no allegation that Bibiji or Yogi Bhajan, in particular, ever used the marks in commerce. There can be no "passing off," because Bibiji has no competing products for which GTO's products could be mistaken. Her unfair competition claim (FAC Count III) must therefore be dismissed.

### 4. Bibiji Has Failed to State an Unfair Trade Practices Claim.

In attempting to defend her pleading of an unfair trade practices claim, Bibiji again simply quotes the conclusory allegations of the FAC, which merely parrot the elements of the cause of action (Opp. at 16-17). But again, the Supreme Court has unequivocally held that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949.

Again, the FAC alleges no facts indicating that Bibiji or Yogi Bhajan ever used the disputed marks in commerce. Only GTO and its predecessors have ever sold products with those marks. Therefore, it is impossible for Bibiji to show that "members of the public are likely to be deceived" based on the facts alleged—there are no competing products with which GTO's products could be confused. *See Sybersound*, 517 F.3d at 1151 (citation omitted). Her unfair trade practices claim (Count IV) must be dismissed.

### 5. The Statute of Limitations Has Run on Bibiji's Unfair Trade Practices Claim as It Relates to Conduct Prior to 2006.

Bibiji asserts that the four-year statute of limitations for an unfair trade practices claim has not run because GTO continues to use the marks, which she contends is a "continuing wrong" (Opp. at 17-18). But it is nevertheless true that GTO's registration of the YOGI TEA mark occurred in 1996 (with the application filed two years earlier, in 1994), which is far more than four years ago. Thus, to the extent her unfair trade practices claim (Count IV) is based on this conduct, or any other conduct prior to 2006, it is barred.

### 6. Bibiji Has Failed to State a Trademark Cancellation Claim.

Bibiji apparently concedes that because GTO's YOGI TEA mark is incontestable, she must allege that it was obtained fraudulently to state a claim for trademark cancellation, and that she must allege the circumstances of that fraud with particularity (Opp. at 18-19). She contends that she has done so, but she once again simply points to conclusory allegations in the FAC (*id.*). As explained above (pp. 2-5), Bibiji's allegations of prior ownership of the mark—the linchpin of her trademark cancellation claim—do not even satisfy the pleading requirements of Rule 8, much less the more stringent requirements of Rule 9(b).

As discussed in GTO's opening brief, a claim for trademark cancellation on the basis of fraud must plead with particularity that (1) there was another use of the same or a confusingly similar mark at the time the oath was signed; (2) the other user had legal rights superior to GTO's; (3) GTO knew the other user had superior rights, and either believed that a likelihood of confusion would result from its use of its mark or had no reasonable basis for believing otherwise; or that (4) GTO, in failing to disclose these facts to the USPTO, intended to procure a registration to which it was not entitled. *See Hana Financial, Inc. v. Hana Bank*, 500 F.Supp.2d 1228, 1234 (C.D.Cal. 2007) (granting motion to dismiss a trademark cancellation claim where these elements were not plead with particularity). As discussed above

(pp. 2-3), Bibiji has not alleged any commercial use of the disputed mark by herself or Yogi Bhajan at any time. Therefore, there was no "use of the same or a confusingly similar mark at the time the oath was signed" and there was no basis for believing that "a likelihood of confusion would result from [GTO's] use of the mark." Bibiji's trademark cancellation claim (Count IX) must be dismissed.

### C. Bibiji's Claims Are Subject to the Arbitration Clause in the License Agreement, and this Case Must Therefore Be Either Dismissed or Stayed, with Court-Ordered Arbitration in Portland, Oregon.

#### 1. The Arbitration Clause Applies to Bibiji's Claims.

Bibiji attempts a rhetorical trick in her first effort to avoid the arbitration clause in the License Agreement. She argues that, because GTO itself contends that the disputed marks are not subject to the License Agreement, GTO cannot also argue that the arbitration clause in that agreement applies (Opp. at 19-20). Of course, this is nonsense. The Court looks to the allegations of the *complaint* to determine whether the claims are arbitrable, not to the litigation positions taken by the party seeking arbitration concerning what is or is not within the scope of the underlying contract. *See, e.g., ValueSelling Assocs., LLC v. Temple*, No. 09 CV 1493 JM, 2009 WL 3736264, at *3 (S.D. Cal. Nov. 5, 2009) ("In determining whether a claim falls within the scope of the arbitration provision, a court will examine the factual allegations of the complaint * * *"). As Bibiji helpfully points out, the parties have taken diametrically opposing positions on whether the YOGI and YOGI TEA marks are considered "Licensed Trademarks" under the License Agreement. Indeed, that question is the central dispute in this case. Obviously, the resolution of that dispute will require the interpretation of the License Agreement—and therefore the License Agreement's arbitration clause is triggered.

Next, Bibiji argues that because her claims sound in tort rather than contract, they do not "arise out of or relate to" the License Agreement, and the arbitration clause is therefore inapplicable by its terms (Opp. at 21-22). She contends that only

contract issues could be decided in the arbitration, and that the arbitrator would not be empowered to resolve "tort" issues (*id.*).[3] For this proposition, Bibiji relies on a 52-year-old case from another district, *Wyatt Earp Enterprises, Inc. v. Sackman, Inc.*, 157 F. Supp. 621, 626-27 (S.D.N.Y. 1958), in which the court held that because a party's unfair competition claim "sounds not in contract but in tort," and interpretation of the parties contract *alone* could not resolve the dispute, the case was not subject to arbitration.[4] The *Wyatt Earp* court interpreted the scope of claims subject to arbitration—those "arising out of or relating to" the contract—extremely narrowly, concluding it only applied to issues of contract interpretation and breach of the contract, and that any claims that went at all beyond these issues were not subject to arbitration. *Id.*

The problem with Bibiji's argument is that *Wyatt Earp* is no longer good law, even in its own district. Only three years later, in *Saucy Susan Products, Inc v. Allied Old English, Inc.*, 200 F. Supp. 724, 728 (S.D.N.Y. 1961), the district court for the Southern District of New York declined to follow *Wyatt Earp*, despite the

---

[3] In connection with this argument, Bibiji cites, without parenthetical explanation, *Int'l Union, United Automobile Aircraft v. Benton Harbor Malleable Industries*, 242 F.2d 536 (6th Cir.), *cert. den.*, 355 U.S. 814 (1957). But that case does not assist Bibiji. In *Int'l Union*, the court simply held that under the terms of the parties' contract, only *employee* grievances were subject to arbitration; because the claim at issue was brought by the *employer* for an improper strike, it was outside the scope of the arbitration clause. *Id.* at 541-42. Nothing in the case suggests that an arbitrator cannot decide issues not involving contract interpretation, or that tort claims are not arbitrable.

[4] Bibiji also bizarrely, and inaccurately, cites to *A&E Plastik Pak Co. v. Monsanto Co.*, 396 F.2d 710 (9th Cir. 1968) (*see* Pl. Resp. at 4). First, *A&E Plastik Pak* did *not* hold that the district court erred in not enjoining arbitration of whether the licensee had promised not to compete with the licensor, whether the licensee had broken that promise, and whether the licensor was justified in repudiating its commitment to purchase product from the licensee. To the contrary, the court held that each of these three issues was *properly* referred to arbitration. 396 F.2d at 716. The court, relying on *American Safety Equipment Corp. v. J. P. Maguire & Co.*, 391 F.2d 821 (2d Cir. 1968), did find that a fourth issue should not have been referred to arbitration because it was "the crucial factual antitrust issue" and was not arbitrable because of the "[p]ublic interest" in enforcement of antitrust laws. *Id.* As the Ninth Circuit has subsequently recognized, however, *American Safety* is no longer good law in light of later Supreme Court precedent, and even antitrust issues are now subject to arbitration. *Nghiem v. NEC Electronic, Inc.*, 25 F.3d 1437, 1441-42 (9th Cir.), *cert. den.*, 513 U.S. 1044 (1994). Of course, the point is moot, as there are no antitrust issues in this case.

"great similarities" between the cases, because it was decided before Second Circuit cases "which emphasized the federal policy of construing arbitration clauses liberally." Moreover, the two cases referring Lanham Act claims to arbitration that Golden Temple cited in its opening brief—*Orange County Choppers, Inc. v. Goen Technologies Corp.*, 374 F. Supp. 2d 372, 374 (S.D.N.Y. 2005) and *Norcom Electronics Corp. v. CIM USA Inc.*, 104 F. Supp. 2d 198, 205-06 (S.D.N.Y. 2000)—were both from the Southern District of New York. Subsequent Second Circuit case law confirms that *Wyatt Earp* was wrongly decided, and that an arbitration clause encompassing claims "arising out of or relating to" a contract should be interpreted broadly to include claims pleaded under tort or statutory theories. *See, e.g., Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 121-22 (2d Cir. 1991) ("The arbitration clause does not limit claims to tort or contract" and included "churning" claims because they "touch matters" covered by the agreements) (citation omitted); *Kamakazi Music Corp. v. Robbins Music Corp.*, 684 F.2d 228, 231 (2d Cir. 1982) ("the arbitration clause was broad enough to encompass Copyright Act claims which required interpretation of the contract"); *Altshul Stern & Co. v. Mitsui Bussan Kaisha, Ltd.*, 385 F.2d 158, 159 (2d Cir. 1967) ("Plaintiff cannot avoid the broad language of the arbitration clause by casting its complaint in tort").

The law in this Circuit is similarly in tune with the Supreme Court's admonition that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). In *Schoenduve Corp. v. Lucent Technologies, Inc.*, 442 F.3d 727, 732 (9th Cir. 2006), for example, the Ninth Circuit held that an arbitration clause applicable to a dispute that "arises out of or relates to" the parties' agreement was intended "to reach all aspects of their relationship" and encompassed claims based on quasi-contract and estoppel theories. *See also Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d

1458, 1464 (9th Cir. 1983) ("arising out of or relating to" language constitutes a "broad arbitration clause" that encompasses more than just matters of contract interpretation and performance) (citations omitted).

Under modern judicial interpretations of the FAA, then, there is no question that claims that touch upon parties' contractual relationship are within the scope of an arbitration clause applicable to all claims "arising out of or relating to" the contract. GTO has already pointed out how allegations relating to the parties' relationship under the License Agreement pervade the FAC (see Memorandum of Points and Authorities in Support of Motion to Dismiss the FAC and, in the Alternative, to Stay Proceedings and Compel Arbitration ("Mot."), at 18-19). There is simply no escaping the fact that the parties' relationship under the License Agreement will be at issue in each and every one of Bibiji's claims.

### 2. The Court Can Dismiss this Case for Improper Venue Pursuant to Rule 12(b)(3).

Next, Bibiji contends that even if her claims are arbitrable, the Court can only stay those claims under 9 U.S.C. § 3, and may not dismiss under 9 U.S.C. § 4 (Opp. at 22). But Bibiji says nothing about *Rule 12(b)(3)*, which provides that a court may dismiss a complaint for improper venue—a basis for dismissal completely independent of Section 4 of the FAA. As explained in GTO's opening brief, a forum selection provision—which the arbitration clause unquestionably contains—is a proper basis for dismissal under Rule 12(b)(3). *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). Moreover, because it has nothing to do with Section 4 of the FAA, the Court may dismiss under Rule 12(b)(3) whether or not it compels arbitration pursuant to Section 4.

### 3. The Court Should Compel Arbitration.

Finally, Bibiji insists that "[t]he Ninth Circuit position is clear" that a district court cannot order arbitration outside the district (Opp. at 23). But as GTO pointed out in its opening brief, none of the Ninth Circuit case law on which Bibiji relies

dealt with a situation in which the *plaintiff* had initiated litigation in the wrong district, and the *defendant* merely asked that the court order arbitration of the plaintiff's claims to proceed in the correct district in keeping with the parties' agreement (Mot. at 23-25). Such an order is in keeping with Section 4's mandate to order that "arbitration proceed in the manner provided for in [the parties'] agreement." 9 U.S.C. § 4.

### III. CONCLUSION

For all of the foregoing reasons, GTO respectfully requests that this Court dismiss this action and, in the alternative, respectfully requests this Court to dismiss or stay this action and compel arbitration in Portland, Oregon.

Dated: May 28, 2010               LANE POWELL PC


By: /s/ Kenneth R. Davis, II
    Kenneth R Davis, II
    Parna A. Mehrbani
    Tiffany H. Scott

GREENBERG GLUSKER FIELDS
CLAMAN MACHTINGER LLP
Stephen S. Smith
Rachel Valadez

Attorneys for Defendant
GOLDEN TEMPLE OF OREGON, LLC