| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA | PRIORITY SEND<br>JS-6 |

CIVIL MINUTES -- GENERAL

Case No.   **CV 10-882-JFW (VBKx)**                                                    Date:  June 9, 2010

Title:         Bibiji Inderjit Kaur Puri -v- Golden Temple of Oregon, LLC, et al.

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

**ATTORNEYS PRESENT FOR PLAINTIFFS:**          **ATTORNEYS PRESENT FOR DEFENDANTS:**
                   None                                                                                    None

**PROCEEDINGS (IN CHAMBERS):**   ORDER GRANTING IN PART, DENYING IN PART DEFENDANT GOLDEN TEMPLE OF OREGON, LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND, IN THE ALTERNATIVE, TO STAY PROCEEDINGS AND COMPEL ARBITRATION [filed 4/22/2010; Docket No. 35]

On April 22, 2010, Defendant Golden Temple of Oregon, LLC ("GTO") filed a Motion to Dismiss the First Amended Complaint and, in the Alternative, to Stay Proceedings and Compel Arbitration.  On May 24, 2010, Plaintiff Bibiji Inderjit Kaur Puri ("Plaintiff") filed her Opposition.  On May 28, 2010, GTO filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.  The hearing calendared for June 14, 2010 is hereby vacated and the matter taken off calendar.  After considering the moving, opposing, and reply papers and the arguments therein, the Court rules as follows:

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is the widow of the late Yogi Bhajan, a spiritual leader and entrepreneur.  In or around 1984, several of Yogi Bhajan's students formed a company, originally known as the Yogi Tea Company, to market and sell "Yogi Tea."  Plaintiff alleges that Yogi Bhajan granted the company a license to use his name and likeness and the trademark "Yogi Tea" to market the teas based on formulas developed by Yogi Bhajan.  The license was renewed and extended on several occasions.

GTO is the successor to the Yogi Tea Company.  In October 2004, GTO entered into a written Nonexclusive Trademark License Agreement (the "Agreement") with Yogi Bhajan, which

superseded the parties' prior agreements.  *See* Declaration of Kenneth R. Davis II, Exhibit A. Plaintiff alleges that, pursuant to the Agreement, Yogi Bhajan granted a license to GTO to use Yogi Bhajan's name and likeness, including the "Yogi Tea" and "Yogi" marks.  In particular, the Agreement provides that GTO was granted a license to use "any trademark, servicemark, logo, insignia, seal, design, or other symbol or device used by or identifying Harbhajan Singh Khalsa Yogiji (also known as Yogi Bhajan), specifically including the name of Harbhajan Singh Khalsa Yogiji, or Yogi Bhajan, any likeness of him approved in accordance with this Agreement, and a facsimile of his signature . . . ."  Declaration of Kenneth R. Davis II, Exhibit A at p. 4, ¶ 1.2.  In addition, the Agreement provides that the "Licensee acknowledges Licensor's exclusive rights in and to the Licensed Trademarks, that the Licensed Trademarks are unique and original to Licensor and that Licensor is the owner thereof."  *Id.* at p. 6, ¶ 5.2.

> The Agreement also contains an arbitration clause, which provides in relevant part:
>
> Any controversy or claim arising out of, or relating to, this Agreement, or the making, performance, or interpretation of this Agreement, shall be settled by arbitration in Portland, Oregon, in accordance with the rules and procedures of Arbitration Services of Portland, Inc., or if that organization is not then in existence, in accordance with the provisions of ORS 33.210-33.250.

*Id.* at p. 10, ¶ 19.

In 2008, GTO terminated the license granted by the Agreement, announcing that it had ceased using Yogi Bhajan's name and likeness.  However, Plaintiff alleges that GTO has continued to use the "Yogi Tea" mark, and expanded the use of the "Yogi" mark to cereals without authority or compensation to the owners of the mark.   In her First Amended Complaint, Plaintiff alleges the following claims for relief: (1) federal statutory and common law trademark infringement; (2) violation of section 43(a) of the Lanham Act; (3) unfair competition; (4) unfair trade practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, (5) imposition of constructive trust; (6) declaratory relief; (7) assignment of trademark applications and registrations to all Yogi marks; (8) determination that GTO has no right to register pursuant to 15 U.S.C. § 1119; and (9) cancellation of registered mark pursuant to 15 U.S.C. § 1119.

GTO moves to dismiss Plaintiff's First Amended Complaint, or in the alternative, to stay proceedings and compel arbitration.

**II.   LEGAL STANDARD**

The Federal Arbitration Act ("FAA") applies to "a contract evidencing a transaction involving commerce."  9 U.S.C. § 2.  Any arbitration agreement within the FAA᾽s scope "shall be valid, irrevocable, and enforceable" and permits a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to file a petition in the district court for an order compelling arbitration "in the manner provided for in such an agreement."  9 U.S.C. §§ 2, 4.  The Court, "upon being satisfied that the making of the agreement for arbitration . . . is not in issue . . . shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.  By the terms of the FAA, the district court shall direct the parties to proceed to arbitration with regard to issues which are within the

purview of the arbitration agreement, and thus there is no place for the exercise of discretion by the district court. *See Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Additionally, a party to a lawsuit pending in federal court may request that the court stay the court proceedings pending the outcome of the arbitration proceedings. 9 U.S.C. § 3; *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1048 (9th Cir. 1996).

Thus, the court's role under the FAA is limited to determining: (1) whether the arbitration agreement is valid and enforceable; and (2) whether the claims asserted are within the purview of the arbitration agreement. *See Howard Elec. & Mech. Co., Inc. v. Frank Brisco Co., Inc.*, 754 F.2d 847, 849 (9th Cir.1985); *Bischoff v. Direct TV, Inc.*, 180 F. Supp. 2d 1097, 1102 (C.D. Cal. 2002). The FAA evinces a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1985). Thus, a court must review questions of arbitrability with the federal policy favoring arbitration in mind. *See id*.

### III.   DISCUSSION

#### A.   Plaintiff's claims are arbitrable.

Because neither party disputes that the arbitration clause is valid and enforceable, the only question for the Court is whether or not the claims are arbitrable. Given that doubts regarding the scope of arbitrable issues should be resolved in favor of arbitration, the Court concludes that the arbitration clause is sufficiently broad to include each of Plaintiff's claims. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . .").

In this case, the arbitration clause provides that "[a]ny controversy or claim arising out of, or relating to, this Agreement, or the making, performance, or interpretation of this Agreement, shall be settled by arbitration . . . ." Courts have interpreted similar clauses as "reach[ing] every dispute . . . having a significant relationship to the contract and . . . having their origin or genesis in the contract." *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) (interpreting similar clause that provided for arbitration of "all disputes arising in connection with this Agreement"). Here, each of Plaintiff's claims almost entirely depends upon who owns the marks "Yogi Tea" and "Yogi," and deciding this issue requires an interpretation of the terms of the Agreement, including whether the scope of the license includes "Yogi Tea" or "Yogi." Indeed, Plaintiff's claims clearly have a significant relationship to the Agreement, as her factual allegations are primarily based upon it. *See* First Amended Complaint, ¶¶ 16-21, 24, 26, 36-38, 48, 83.

Plaintiff argues that the determination of ownership of the "Yogi Tea" or "Yogi" marks does not require any interpretation of the Agreement because (1) GTO contends that the Agreement does not grant it a license to use the marks, but instead that GTO itself owns the marks; and (2) Plaintiff's First Amended Complaint alleges conduct occurring after GTO's termination of the license. Plaintiff's first argument merely highlights that this dispute involves a disagreement as to the interpretation of the terms of the Agreement, and whether the Agreement establishes that "Yogi Tea" and "Yogi" are marks owned by Plaintiff. With respect to Plaintiff's second argument, the arbitration clause is not limited in its application to conduct occurring prior to its termination, but instead applies to "[a]ny controversy or claim arising out of, or relating to, this Agreement, or the

making performance, or interpretation of this Agreement."  See *Filmex, L.L.C. v. Novoa Investments, L.L.C.*, 2006 WL 2091661, at * (D. Ariz. July 17, 2006) ("The Arbitration Provision at issue here . . . creates a duty to arbitrate even after termination of the License Agreement, because Filimex's trademark infringement, common law trademark, trade name and trade dress infringement, and unfair competition arise out of the terms of the License Agreement."). Accordingly, each of the claims in the First Amended Complaint are arbitrable.

### B.   The Court cannot compel arbitration outside of this district.

Despite finding that each of the claims in the First Amended Complaint are arbitrable, the Court cannot compel arbitration in Portland, Oregon in accordance with the terms of the Agreement's arbitration clause.

Section 4 of the FAA provides that:

> The Court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.  The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

See 9 U.S.C. § 4.  Given the statutory language of section 4 of the FAA, the Ninth Circuit has concluded that district courts are limited to compelling arbitration within the district in which the action was filed.  See *Continental Grain Co. v. Dant & Russell, Inc.*, 118 F.2d 967, 968-69 (9th Cir. 1941) (holding that § 4 of the FAA limits a district court to compelling arbitration within the district in which the action was filed); *Textile Unlimited, Inc. v. A..BMH & Company, Inc.*, 240 F.3d 781, 785 (9th Cir. 2001) ("[B]y its terms, § 4 only confines the *arbitration* to the district in which the petition to compel is filed. It does not require that the petition be filed where the contract specified that arbitration should occur.").

Yet, in this case, if the Court were to compel the parties to arbitrate within its own district, the Court would run afoul of the FAA's mandate that the Court direct the parties to proceed to arbitration "in accordance with the terms of the agreement."  See 9 U.S.C. § 4.  The Ninth Circuit has not addressed whether a district court can compel arbitration in its own district, contrary to the express terms of the parties' arbitration agreement, when the party seeking to compel arbitration did not initially file suit.[1]  Under these circumstances, in accordance with the majority view in other circuits, the Court concludes that it cannot compel arbitration in its own district if the parties'

---

[1]The Ninth Circuit in *Continental Grain Co. v. Dant & Russell, Inc.* was presented with a different question, i.e., whether the district court had the authority to compel arbitration within its district, contrary to the express terms of the arbitration agreement, when the party seeking to compel arbitration filed the action.  118 F.2d at 969.  In affirming the district court's decision to compel arbitration within its district, the Ninth Circuit stated that "[t]he [party], having invoked the jurisdiction of the United States District Court for Oregon is hardly in a position to complain that it has exercised that jurisdiction in accordance with the statute giving it jurisdiction." *Id.*

agreement provides for arbitration outside the district.[2]  *See, e.g., Ansari v. Qwest Communications Corp.*, 414 F.3d 1214, 1219-1220 (10th Cir. 2005); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 328 (7th Cir. 1995).  Indeed, if the Court were to conclude otherwise, "'[a]ny party to an arbitration agreement could avoid the effect of the agreed-to forum merely by filing suit in a different district.  This in turn could lead to the parties racing to different courthouses to obtain what each thinks is the most convenient forum for it, in disregard of its contractual obligations.'" *Lauer*, 49 F.3d at 328 (quoting *Snyder v. Smith*, 736 F.2d 409, 419-20 (7th Cir. 1984).

Although the Court cannot compel arbitration in accordance with the parties' agreement, the Court has the option of staying the action pending arbitration pursuant to 9 U.S.C. § 3, or dismissing the action pursuant to Federal Rule of Civil Procedure 12(b)(6).  See 9 U.S.C. § 3 ("If any suit . . . be brought . . . upon any issue referable to arbitration . . . , the court . . ., upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."); *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (affirming district court's decision to dismiss an action referable to arbitration, instead of staying the action pursuant to 9 U.S.C. § 3); *Dwyer v. Dynetech Corp.*, 2007 WL 2726699, at *6 (N.D. Cal. Sept. 17, 2007) (dismissing action without compelling arbitration).  In this case, the Court exercises its discretion and will dismiss, rather than stay the action, because all of Plaintiff's claims are arbitrable.  Accordingly, the Court **DISMISSES** the action without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), and **DENIES** the balance of GTO's motion **as moot.**

## IV.   CONCLUSION

For the foregoing reasons, GTO's Motion to Dismiss the First Amended Complaint and, in the Alternative, to Stay Proceedings and Compel Arbitration is **GRANTED in part, DENIED in part.**  This action is **DISMISSED without prejudice.**

IT IS SO ORDERED.

---

[2]Moreover, the parties agree that if Plaintiff's claims are arbitrable, the arbitration should proceed in Oregon, and that the Court should not compel arbitration within this district.  *See* GTO's Motion, p. 22-25 (requesting the Court to compel arbitration in Oregon); Plaintiff's Opposition, p. 22 ("Thus, where arbitration is to proceed in another district, as in this case, only a stay is available.").